Filed 5/2/13  P. v. Jones CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B240771 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA389974) |
| CHARLES DEONDRA JONES et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge.  Affirmed as modified.

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant Charles Deondra Jones.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant Kastin Decombre.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury convicted defendants, Charles Deondra Jones and Kastin Decombre, of two counts of attempted robbery.  (Pen. Code,[1] §§ 664, 211.)  Defendants were each sentenced to 10 years and 4 months in state prison.  We modify the judgments and affirm as modified.

## II.  THE EVIDENCE

On October 15, 2011, at approximately 9:30 p.m., Steve Garcia and Jose B. were walking to a market.  They were in the company of five female cousins including Carol B.  They encountered defendants and a third man who were standing together on the grass.  Mr. Garcia testified that Mr. Jones stepped onto the sidewalk.  Mr. Jones asked Mr. Garcia, "Where are you from?"  Mr. Garcia said he was not from anywhere.  Mr. Jones came face-to-face with Mr. Garcia.  Mr. Jones called Mr. Garcia a scared little bitch.  Mr. Jones asked, "Are you scared?"  Mr. Garcia denied that he was afraid.  Mr. Jones responded:  "Yeah, you is.  You a scared little bitch."  Mr. Jones told Mr. Garcia, "Empty out your pockets or I'm going to stick you."  Mr. Garcia, who was frightened, herded his cousins away and called the police.  As he walked away, Mr. Garcia heard three separate voices harassing them.  They repeatedly said "empty your pockets" or "we are going to stick you."  One of the voices belonged to Mr. Jones.  Mr. Garcia had a clear view of Mr. Jones.  Mr. Garcia  described Mr. Jones as "very dark skinned" in color.  Mr. Garcia caught a glimpse of Mr. Decombre.  Mr. Decombre's skin was lighter than that of Mr. Jones.

---

[1]     All further statutory references are to the Penal Code except where otherwise noted.

There was testimony about a prior inconsistent statement by Mr. Garcia concerning which defendant initiated the incident. Officer Casey Chubbuck interviewed Mr. Garcia after the attempted robberies. Officer Chubbuck testified, "I remember that [Mr. Garcia] told me that [Mr. Decombre] was the one who had approached him and simulated a possible weapon in the waistband." At the preliminary examination, Officer Chubbuck testified, "[Mr. Garcia] stated that he identified them and he identified [Mr. Decombre] as the one that basically went to his waistband stimulating that he had a weapon." However, at the preliminary examination, Officer Chubbuck testified that he could not recall which of the defendants was identified by Mr. Garcia.

Fourteen-year-old Carol B. saw defendants approach Mr. Garcia, her cousin, and Jose B., her brother. Defendants asked, "Where are you from?" According to Carol B., it was Mr. Decombre, not Mr. Jones, who came face-to-face with Mr. Garcia. Mr. Jones stood back with his hands around his waist area, encouraging the others. Mr. Jones said: "Yeah, where are you from? Yeah." The unidentified third individual was face-to-face with Jose B. Mr. Garcia said he was not from anywhere. Mr. Decombre asked, "Are you scared?" Carol B. heard someone say, "I'm going stick." As Carol B. and her cousins walked away, she heard multiple voices saying, "All you empty your pockets." She remembered someone saying, "I will stick you."

Seventeen-year-old Jose B. testified Mr. Decombre approached and asked, "Where are you from?" Jose B. and Mr. Garcia told Mr. Decombre they were not from anywhere. According to Jose B., Mr. Decombre "got in" Mr. Garcia's face. Mr. Decombre and Mr. Garcia were face-to-face, within an inch of each other. Mr. Decombre asked whether Mr. Garcia was scared. Mr. Garcia said, "No." Mr. Decombre threatened to "stick" Mr. Garcia. Mr. Garcia said, "Let's get out of here." While Jose B. walked away, Mr. Decombre said, "[T]hat they're going to make it quick and to empty out our pockets." The only voice Jose B. heard was Mr. Decombre's voice. Defendants followed them as they walked away.

Officer Timothy Jang and a partner detained defendants in the vicinity of the attempted robbery. Defendants had ducked down behind a vehicle together. Mr.

3

Decombre said without prompting: "Why am I being stopped like this? I didn't do anything. I didn't take anything. I didn't commit any robbery." During a field show-up, Mr. Garcia, Jose B. and Carol B. all identified defendants as their assailants. No property was taken from the victims.

Francisco Gomez testified that on July 14, 2009, at approximately 10:30 p.m., two African-American men assaulted him and took his property. One assailant was darker than the other. The darker complected robber grabbed Mr. Gomez in a choke hold. The lighter skinned person searched through Mr. Gomez's pockets. When the robbery ended, the men ran away. Mr. Gomez saw the two robbers the next day and called the police. Acting on information from Mr. Gomez, Officer Carlos Escobar detained defendants. Mr. Gomez identified defendants as the men who robbed him. A search of Mr. Decombre's backpack uncovered Mr. Gomez's cell phone. Defendants were arrested. Mr. Decombre admitted to Officer Escobar that together with a second male, he had robbed Mr. Gomez one day earlier. Mr. Decombre admitted using a chokehold on Mr. Gomez.

III. DISCUSSION

A. Sufficiency Of The Evidence

Mr. Jones argues the evidence was insufficient to prove one or both counts of attempted robbery. Although Mr. Decombre purports to join in this argument, he has not articulated how the evidence was insufficient as to him. We disagree. We review the judgment for substantial evidence. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Maury* (2003) 30 Cal. 4th 342, 403.) On appeal we view the evidence in the light most favorable to the verdict. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1028; *People v. Snow* (2003) 30 Cal.4th 43, 66.)

There was substantial evidence Mr. Jones was guilty of attempting to rob Mr. Garcia and Jose B. either as a direct perpetrator or as an aider and abettor.

4

Here, three individuals acted together in an attempt to rob the victims. They were standing together when the victims approached. They confronted the two male members of the group, Mr. Garcia and Jose B. The three assailants remained together while either Mr. Jones or Mr. Decombre accosted Mr. Garcia face-to-face. All three men verbally harassed and threatened the victims. They demanded that the victims empty their pockets. The three perpetrators followed the victims as they walked away, continuing to demand that they empty their pockets and threatening to "stick" them. After the attempted robbery, Mr. Jones and Mr. Decombre fled together. They attempted to evade the police. The jury could reasonably find there was no evidence Mr. Jones was surprised by his companions' conduct or was an unwitting bystander to it. Even if he was not the primary aggressor, there was substantial evidence he knew about and shared Mr. Decombre's intent to rob the victims. Further, there was substantial evidence Mr. Jones acted in a supportive role, encouraging and facilitating Mr. Decombre's attempt to commit the robberies. (*People v. Medina* (2007) 41 Cal.4th 685, 694; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117; *In re Juan G.* (2003) 112 Cal.App.4th 1, 5; *People v. Salgado* (2001) 88 Cal.App.4th 5, 15-16.)

## B. Interference With Jury Deliberations

Defendants argue the trial court impermissibly interfered with jury deliberations and coerced a guilty verdict. Defendants cite to questioning by the trial court. Defendants did not object to the trial court's questioning of a juror after misconduct allegations were raised. Defendants therefore forfeited any claim of error. (*People v. Russell* (2010) 50 Cal.4th 1228, 1250; see *People v. Holloway* (2004) 33 Cal.4th 96, 124 [failure to seek juror's excusal].) Even if the issue were properly before us, we would not find any abuse of discretion or violation of defendants' rights.

The jury commenced deliberating at 2:53 p.m. on Friday, February 3, 2012. On Monday, February 6, 2012, at 2:43 p.m., the trial court received word a juror might be unwilling to follow the law. The trial court questioned the foreperson and the juror at

5

sidebar.  The foreperson raised an issue concerning Juror No. 7.  According to the foreperson, Juror No. 7 stated that words alone could not violate the law.  Juror No. 7 said he would not vote to convict based on words alone.  Juror No. 7 had said that absent a weapon, use of force or the taking of property, the law could not have been broken.  Juror No. 7 said there was no disagreement about the facts.  He simply did not believe a person should be penalized for use of words alone without weapon use, a violent act or taking of property.  The jury vote at the time was "close to 10 to 2" for conviction according to the foreperson.

The sidebar discussion between the trial court, Juror No. 7, and counsel was as follows:  "The Court:  Good afternoon, sir.  [¶]  Juror No. 7, there is some concern expressed by the foreperson that you may have a disagreement with the law.  [¶]  Juror No. 7:  Yeah.  [¶]  The Court:  And I need to get your input.  I need you to explain to me whether there is a disagreement as to what should be the law or whether there is a difference of opinion as to the facts.  [¶]  Do you understand my question?  [¶]  Juror No. 7:  Yeah.  [¶]  The Court:  And the court is not going to turn to jury instruction 460 and 1600."

The following ensued:  "Based on what the court has heard from the foreperson, let me just ask you, if a person approaches another and says things that cause that person to be fearful, and the person who says the statements that cause that person to be fearful intends to take property belonging to that person, but for one reason or another the person does not give that property over and simply walks away, do you believe a crime has been committed:  [¶]  Juror No. 7:  It is the word or word coming out from the – from the defendant, I don't see any – I vote attempted robbery – that mean I vote robbery, the same thing.  That mean I have to have some proof that physical violent property loose or criminal act.  [¶]  The Court:  Okay.  [¶]  Well, what the law says, sir, is that if by fear, if someone says something that causes a person to be fearful and the person says those things with the intent to obtain property from that person, the law says that that is attempted robbery, even though nothing was taken, there was no physical touching of the other person.  Fear by itself, according to the law, is enough.  [¶]  Juror No. 7:  But it not

6

beyond a reasonable doubt. That I'm talking about beyond. The law say that it say beyond. I have a problem with the beyond. [¶] The Court: Okay. [¶] Explain, sir. [¶] Juror No. 7: I could saying that it is not a reasonable – a reasonable doubt. [¶] The Court: What isn't? [¶] Juror No. 7: Huh? [¶] The Court: What isn't beyond a reasonable doubt? [¶] Juror No. 7: The – you know, he shows weapon, physical violent, take the property, and show me that – or some kind of attack to each other, there is a – show real evidence. That's a beyond."

The discussion continued as follows: "The Court: Okay. [¶] It's not necessarily that easy, sir. The law does not require a weapon to be present. The law does not require physical, physical force to be used. [¶] If, for instance, I would approach you on the street and say to you I'm going to harm you if you don't give me your wallet, if you are in fear and the only thing that prevents you from giving me your wallet is that you ran away or something else prevents me obtaining your wallet, because I have used fear to try and obtain that property, that if you find that the fear exists beyond a reasonable doubt, even though no property was given, that constitutes a violation of the law. [¶] Do you disagree with how the law is written? [¶] Juror No. 7: I do not disagree. I agree with the law. But this is – it's – some something – like a misconduct to me. Not a criminal act. What disturb my mind, there is no proof beyond. [¶] The Court: What is not being proven to you beyond a reasonable doubt? Explain to me. [¶] Juror No. 7: I was saying use weapon just to physical violent and take the property and no serious  -- no serious criminal act happen when they go into – when they walk into each other. [¶] The Court: Have you understood my attempt to explain to you -- [¶] Juror No. 7: I understand. I know. [¶] The Court:  -- no weapon, no physical violence is necessary. It is not required under the law. [¶] If I say certain things to another person that causes that person to be in fear and something then prevented that person from giving their property, saying things can be sufficient. [¶] Do you disagree with that? [¶] Juror No. 7: Sure, sure, I disagree. But just I ask – just I ask – I was saying that a real proof that I think – I didn't see proof, that's all. [¶] The Court: Proof as to what? [¶] Juror No. 7: To use the

7

weapon to get at the property to get, you know, money or something else. That's – that's the proof to me on that – on that particular point."

The following ensued: "[Deputy Alternate Public Defender Philip] Peng [for Mr. Jones]: Sir, are you saying that because there's no weapon or there's no intent -- [¶] Juror No. 7: No physical violence. [¶] Mr. Peng: Right. So – so you're saying there's no proof beyond a reasonable doubt that they intended to rob. [¶] Juror No. 7: Yeah. There is no plan at all. [¶] Mr. Peng: Okay. [¶] Juror No. 7: This is the coincident. [¶] [Deputy Public Defender Erika] Dowdell [for Mr. Decombre]: And that was going to also be my question, your honor, about do you feel like – do you feel there is a problem with what the people really intended to do, if they really wanted to take the property away or not; is that your issue? [¶] Juror No. 7: I don't see that bothers me. Bother me is what I'm saying again and again is no proof to my eye, to my thinking about is this the real proof or no."

Questioning by the prosecutor then occurred: "[Deputy District Attorney Guillermo] Santiso: I have two questions. [¶] Looks like you're using your own standard. [¶] Juror No. 7: Uh-huh. [¶] Mr. Santiso: And my second question is do you believe that the crime that you – that you cannot commit the crime of attempted robbery based on fear alone? [¶] Juror No. 7: Yes, it can. It can be. [¶] Mr. Santiso: Okay. [¶] Juror No. 7: But I don't want to repeat again and again and again. But it can. [¶] Mr. Santiso: Let me stop you. So you believe that the crime of attempted robbery can be committed if there's a weapon used? Yes or no. [¶] Juror No. 7: Sure. It's a weapon, physical violence, property, money, no serious crime act. It just – they just talk. [¶] The Court: The just what? [¶] Juror No. 7: They just talk to each other."

After the prosecutor inquired, the following transpired: "The Court: And you don't believe the words alone cause a person -- [¶] Juror No. 7: Yeah. [¶] The Court: -- to be guilty. [¶] Juror No. 7: No. [¶] Mr. Peng: So I just want to make sure. [¶] So you're saying that – are you saying that in this case that because there was no weapon and no property and no money taken, that you don't think the defendants had an intent to commit a robbery? [¶] In other words, they just went and were threatening somebody,

8

but they didn't plan to take anything?  Is that what you're saying?  [¶]  Juror No. 7: Yeah, they didn't plan do, that mean there is no planning.  [¶]  Mr. Peng:  Okay, okay. [¶]  The Court:  Do you agree that one of the defendants made a statement, 'Where are you from,' and that that statement suggested a gang?  [¶]  Juror No. 7:  No.  [¶]  The Court:  You don't' find --  [¶]  Juror No. 7:  I work in U.S. Postal Service 30 years.  I heard a hundred more than that at a time.  That's a statement.  [¶]  The Court:  Okay.  [¶] Do you find beyond a reasonable doubt that someone told Steve Garcia or Jose Bautista 'Give us your property'?  [¶]  Juror No. 7:  There is no property lost in – in this even[t]. [¶]  The Court:  But there doesn't have to be.  Do you understand that?  [¶]  Juror No. 7: Yeah.  [¶]  The Court:  You do understand?  [¶]  Juror No. 7:  Yeah.  Yeah.  I understand. There is no property.  That mean beyond my understanding, beyond a reason now that I am supposed to, you know, convict the right person.  If I convict, it going to make me guilty in my mind.  That how I'm supposed to stay on that.  [¶]  In case that my job not to do well, you can check the juror decision.  [¶]  The Court:  No, I appreciate that, and that's why we're taking the time to really try and understand what your thoughts are.  [¶] Juror No. 7:  It's so disturb very much when I convict a person without do anything.  [¶] We just talk mouth to mouth and then make them guilty, felony, in prison for more than a year, that – that disturb my mind.  [¶]  The Court:  Do counsel have any further questions?  [¶]  Mr. Peng:  No.  [¶]  Ms. Dowdell:  No.  [¶]  Mr. Santiso:  No.  [¶]  The Court:  Okay.  [¶]  Thank you."

Counsel disagreed whether Juror No. 7 was refusing to follow the law.  Extensive discussion followed during which the trial court indicated it had read our Supreme Court's decision in *People v. Cleveland* (2001) 25 Cal.4th  466, 474-485 (*Cleveland*). (See *People v. Allen and Johnson* (2011) 53 Cal.4th 60, 70.)  The trial court commented in part:  "*People v. Cleveland* goes on extensively about the need to maintain the secrecy of the deliberation process, that a court's inquiry needs to be limited so that the secrecy and the sanctity of that deliberative process is not violated.  [¶]  The *Cleveland* case further articulates the need for the court in assessing whether it is appropriate to discharge

9

a juror to remain focused on whether or not there is simply a factual disagreement as opposed to whether or not a particular juror is failing to follow the law."

On February 7, 2012, the trial court *reinstructed* the jury as follows: "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions. [¶] Additionally, please keep an open mind and openly exchange your thoughts and ideas about this case. Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion. Please at all times treat one another courteously. Your role is to be an impartial judge of the facts, not to act as an advocate for one side or the other." In addition, the trial court gave a *new* instruction as follows: "Use of a weapon or the use of physical force are not requisites for a finding of robbery. Where intimidation is relied upon, it can be established by proof of conduct, words or circumstances reasonably calculated to produce fear." After receiving the supplemental instruction, the jury deliberated for 30 minutes before returning its verdicts.

It is undisputed that a jury member who refuses to follow the law may be discharged for failing to perform his or her duties as a juror. (§ 1089; *People v. Alexander* (2010) 49 Cal.4th 846, 926; *People v. Engelman* (2002) 28 Cal.4th 436, 444 (*Engelman*.) Further, as our Supreme Court has held: "The trial court's authority to discharge a juror includes the authority to conduct an appropriate investigation concerning whether there is good cause to do so, and the authority to take 'less drastic steps [than discharge] where appropriate to deter any misconduct or misunderstanding it has reason to suspect.' (*People v. Keenan* (1988) 46 Cal.3d 478, 533 . . . .) . . . '[A] trial court's inquiry into possible grounds for discharge of a deliberating juror should be as limited in scope as possible, to avoid intruding unnecessarily upon the sanctity of the jury's deliberations. The inquiry should focus upon the conduct of the jurors, rather than upon the content of the deliberations. Additionally, the inquiry should cease once the court is satisfied that the juror at issue is participating in deliberations and has not expressed an intention to disregard the court's instructions or otherwise committed

10

misconduct, and that no other proper ground for discharge exists.' (*Cleveland, supra,* 25 Cal.4th at p. 485.)  Nonetheless, the need to protect the sanctity of the deliberations does not mean that any inquiry into the deliberation process violates the defendant's constitutional or statutory rights:  'secrecy *may* give way to reasonable inquiry by the court when it receives an allegation that a deliberating juror has committed misconduct.' (*Engelman, supra,* 28 Cal.4th at p. 443, citing *Cleveland, supra,* 25 Cal.4th at p. 476.)  On appeal, we review for abuse of discretion the trial court's decisions concerning whether and how to investigate the possibility that a juror should be discharged for failure to perform his or her duties, and whether, ultimately, to discharge the juror or take some other action.  (*Engelman, supra,* 28 Cal.4th at p. 442.)" (*People v. Alexander, supra,* 49 Cal.4th at pp. 926-927.)

Defendants first assert Juror No. 7 understood the law but was unpersuaded by the evidence.  They characterize conversation with Juror No. 7 as protracted and the trial court's questioning as coercive and intimidating.  We disagree with this characterization. The trial court reasonably viewed the remarks of Juror No. 7 as indicating he might not be following the law.  The trial court questioned Juror No. 7 in an attempt to ascertain whether he was in fact unwilling to follow the law.  The trial court's questions were reasonable.  The inquiry, in which defense counsel participated, lasted only as long as necessary to satisfy the trial court that it understood the position of Juror No. 7.  The trial court was mindful of the need to maintain what our Supreme Court has described as the secrecy and sanctity of the deliberation process.  (See *People v. Russell, supra,* 50 Cal.4th at pp. 1251-1252; *Cleveland, supra*, 25 Cal.4th at p. 485.)

Defendants further argue the trial court compounded its error by giving the supplemental instruction.  (Mr. Decombre objected to the proposed new instruction; Mr. Jones did not join.)  Again, we disagree.  The trial court took reasonable steps to remedy the problem presented.  The supplemental instruction correctly stated the law.  (See *People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1319; *People v. Brew* (1991) 2 Cal.App.4th 99, 104; *People v. Borra* (1932) 123 Cal.App. 482, 484.)  It was not improper for the trial court to take steps to ensure jurors were following the law in order

11

to avoid removing a juror for failing to do so.  (*People v. Alexander, supra,* 49 Cal.4th at p. 931; see *People v. Fuiava* (2012) 53 Cal.App.4th 622, 713.)  There was no abuse of discretion.  (*People v. Alexander, supra,* 49 Cal.4th at pp. 929-933; see *People v. Fuiava, supra*, 53 Cal.App.4th at p. 713.)


## C.  Other Crimes Evidence


The trial court admitted evidence of the 2009 robbery of Mr. Gomez as tending to prove defendants' intent to rob the victims in this case.  (Evid. Code, § 1101, subd. (b).)  Defendants argue:  this was prejudicial error; the prior robbery was not sufficiently similar to the present offense to support an inference the intent was the same; and the evidence was more prejudicial than probative.  Our review is for an abuse of discretion.  (*People v. Valdez* (2012) 55 Cal.4th 82, 133 [§ 352]; *People v. Whisenhunt* (2008) 44 Cal.4th 174, 203 [Evid. Code, §§ 352, 1101, subd. (b)].)  We find no abuse of discretion.

Other crimes evidence is admissible on the question of intent.  But the prior and present crimes must be sufficiently similar to support an inference the accused had the same intent in both instances.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 23; *People v. Ewoldt* (1994) 7 Cal.4th 380, 402; *People v. Robbins* (1988) 45 Cal.3d 867, 879, superseded by statute on another point as noted in *People v. Jennings* (1991) 53 Cal.3d 334, 387, fn. 13.)  As our Supreme Court has explained, "The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution."  (*People v. Robbins, supra,* 45 Cal.3d at p. 879; see *People v. Thomas* (2011) 52 Cal.4th 336, 355-356.)  There was sufficient similarity here.  In both cases, defendants acted together.  They targeted strangers.  They threatened their victims in an area open to the public.  They attacked at night.  They used force or the threat of force.  They sought the contents of their victims' pockets.  And they left together after committing the crimes.


12

Even if it was error to admit the evidence, it is not reasonably probable the result would have been more favorable to defendants in its absence. (Evid. Code, § 353, subd. (b); *People v. Ayala* (2000) 23 Cal.4th 225, 271; *People v. Earp* (1999) 20 Cal.4th 826, 878.) Three eyewitnesses identified defendants as the men who threatened them with violence and attempted to rob them. They identified defendants in the immediate aftermath of the incident and again at trial. Defendants demanded the victims empty their pockets and threatened them with violence. They followed the victims as they walked away. Defendants fled together and attempted to evade the police.

Further, the trial court could reasonably conclude that the relevance of the uncharged robbery evidence was not substantially outweighed by its prejudicial effect. (Evid. Code, § 352; *People v. Pearson* (2013) 56 Cal.4th 393, __ [2013 WL 1149952, 44].) We review undue prejudice claims in connection with the admission of evidence for an abuse of discretion. (*People v. Pearson, supra*, 56 Cal.4th at p. __ [2013 WL 1149952, 44]; *People v. Thomas* (2011) 51 Cal.4th 449, 488.) Here the presentation of the uncharged robbery was brief and not inflammatory. Further, its logical relationship to this case was substantial. As in connection with the trial court's relevance ruling, no abuse of discretion occurred.

### D. Cumulative Error

Defendants argue the cumulative effect of the identified errors requires reversal. However, we have not found any error prejudicial to defendants. (*People v. Williams* (2013) 56 Cal.4th 165, 201; *People v. Watkins* (2012) 55 Cal.4th 999, 1036.)

## E. Sentencing

### 1. Prior Prison Term Enhancement, Section 667.5, Subdivision (b)

The information alleged Mr. Jones had served three prior prison terms within the meaning of section 667.5, subdivision (b): case No. BA359074 (§ 211); case No. BA351044 (Health & Saf. Code, § 11350); and case No. BA350556 (Health & Saf. Code, § 11360). Mr. Jones admitted only the truth of a single prior prison term allegation. Mr. Jones admitted the allegation as to case No. BA359074 was true. Mr. Jones' lawyer, Mr. Peng, stated "[T]here was one commitment." The trial court responded, "Very well."

As to Mr. Jones, based on his prior robbery conviction in case No. BA359074, the trial court imposed a five-year prior conviction enhancement under section 667, subdivision (a)(1). Further, the trial court stayed a prior prison term enhancement under section 667.5, subdivision (b). Prior prison terms enhancements may not be stayed under the current circumstances. (*People v. Haykel* (2002) 96 Cal.App.4th 146, 151; *People v. Harvey* (1991) 233 Cal.App.3d 1206, 1231.) When, as here, the trial court imposes a determinate sentence, a prior prison term enhancement must either be imposed or stricken. (§ 1170.1, subd. (h); *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1561; *People v. Haykel, supra,* 96 Cal.App.4th at p. 151; *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1521; *People v. Harvey, supra,* 233 Cal.App.3d at p. 1231.) Moreover, the section 667.5, subdivision (b) prior prison term enhancement emerged from the same case as the section 667, subdivision (a)(1) prior conviction enhancement, case No. BA359074. Therefore, the prior prison term enhancement must be stricken. (*People v. Jones* (1993) 5 Cal.4th 1142, 1152-1153; *People v. Perez* (2011) 195 Cal.App.4th 801, 805.)

14

## 2. Conduct Credit

The trial court apparently relied upon section 2933.1, subdivision (b). That provision of law limits presentence conduct credits to 15 per cent when the accused has committed a violent felony within the meaning of section 667.5, subdivision (c). In the present case, defendants were convicted of attempted second degree robbery. An attempt to commit a crime listed in section 667.5, subdivision (c) is not a violent felony except for attempted murder. (*People v. Ibarra* (1982) 134 Cal.App.3d 413, 424-425; see *In re McSherry* (2007) 157 Cal.App.4th 324, 330; *People v. Reed* (2005) 129 Cal.App.4th 1281, 1284-1285 & fn. 1.) Because attempted robbery is not a violent felony, the 15 per cent limitation on presentence conduct credits is inapplicable. Therefore, defendants should receive 186 days of conduct credits under section 4019, subdivisions (b), (c) and (f). (*People v. Brown* (2012) 54 Cal.4th 314, 318, fn. 3; *People v. Garcia* (2012) 209 Cal.App.4th 530, 540.)

## 3. Abstract Of Judgment

Mr. Decombre's abstract of judgment must be amended to omit the reference to a stayed prior prison term enhancement under section 667.5, subdivision (b). No such enhancement was alleged or imposed as to him.

## IV.  DISPOSITION

The judgment as to Mr. Jones is modified to strike the section 667.5, subdivision (b) prior prison term enhancement based on case No. BA359074.  The judgment as to both defendants is modified to award 186 days of conduct credit under Penal Code section 4019.  In all other respects, the judgments are affirmed.  Upon remittitur issuance, the clerk of the superior court is to prepare amended abstracts of judgment reflecting the judgments as modified.  In addition, the clerk of the superior court is to amend Mr. Decombre's abstract of judgment to omit the reference to a stayed prior prison term enhancement under Penal Code section 667.5, subdivision (b).  The clerk of the superior court must deliver copies of the amended abstracts of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.


We concur:


KRIEGLER, J.


O'NEILL, J.*

---

*       Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16